IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DEBBIE NESBITT,

    Plaintiff,

       v.

UNIVERSITY OF MARYLAND
MEDICAL SYSTEM, *et al.*,

    Defendants.

CIVIL NO.: WDQ-13-0125

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Debbie Nesbitt sued the University of Maryland Medical
System ("UMMS"), Baltimore Washington Medical Center, Inc.
("BWMC"), and Frank V. Venuto (collectively, the "defendants")
for employment discrimination and other claims. Pending are the
defendants' motion to dismiss for failure to state a claim and
Nesbitt's unopposed motion for leave to file a surreply. ECF
Nos. 19, 23. No hearing is necessary. Local Rule 105.6 (D. Md.
2011). For the following reasons, the defendants' motion will
be granted in part and denied in part, and Nesbitt's motion will
be granted.

I.  Background[1]

Nesbitt, who was born in 1952, was hired by BWMC--a hospital owned and operated by UMMS--as a Human Resources ("HR") Recruiter on August 5, 1996.[2]  ECF No. 18 ¶¶ 9-11.  On May 12, 2008, Venuto was hired as vice president of the HR Division. *Id.* ¶ 14.

Soon after Venuto started, he began refusing to respond to Nesbitt's emails and avoided discussing work matters with her by initiating telephone calls when she was in his office.  *Id.* ¶ 15.  At meetings Venuto often interrupted Nesbitt, responded to her condescendingly, and refused to acknowledge Nesbitt when she volunteered to assist with a project.  *Id.* ¶¶ 16-17.  This occurred "continuously and persistently on a weekly basis."  *Id.* ¶ 16.  At one point, he interrupted Nesbitt while she was talking during a staff meeting by "exclaiming out loud 'you are killing me!'"  *Id.* ¶ 17.  Venuto permitted younger male workers unlimited time to speak during meetings and gave them positive

---

[1] The facts are from the amended complaint.  ECF No. 18.  For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true.  *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] Nesbitt "received only positive performance evaluations" during her 13-year tenure at BWMC and was never disciplined.  ECF No. 18 ¶¶ 11, 13.

2

feedback. *Id.* ¶¶ 22-23. Venuto also accused Nesbitt in a staff meeting of "looking at his butt;" the Director of HR, Patricia Loughlin, told Venuto that he was incorrect. *Id.* ¶ 18. Nesbitt was "extremely embarrass[ed]" by the accusation. *Id.*

"Over time, [Venuto's] conduct" became "increasingly aggressive"--at least 12 incidents occurred in which Venuto "attempted to bully, intimidate and demean" Nesbitt "by yelling at her in front of other staff members over routine work-related matters." *Id.* ¶ 19. In April 2009, during a meeting with Loughlin and Nesbitt, Venuto "became very angry" with Nesbitt and "started yelling and physically shaking." *Id.* ¶ 20. He "condescending[ly]" told her "'Let me tell you something dear, I have covered your back'" and stated, without explanation, that he had been "'tasked with firing'" her "when he was hired." *Id.*

In May 2009, Venuto "yell[ed] at and berate[d] other female employees over work-related matters" during a staff meeting. *Id.* ¶ 21. However, Venuto did not "yell[] at[,] . . . belittle, undermine, or embarrass" male employees during the weekly meetings.[3] *Id.* Instead, he "allow[ed] them unlimited time to discuss work related matters" and "provid[ed] positive feedback to their questions." *Id.* He also treated younger employees more favorably--he was "consistently dismissive" toward Nesbitt

---

[3] These HR Division male employees "included James Uhlrich, Keith Peron, and Dan Neal." ECF No. 18 ¶ 22.

and the other older women employees, but "more receptive" to younger employees, such as Dan Neal.[4]  *Id.* ¶ 23.  On at least 10 other occasions, Nesbitt witnessed female employees crying after Venuto yelled at them.  *Id.* ¶ 24.

Venuto's treatment of Nesbitt caused her anxiety and physical symptoms, requiring her to take medical leave from June 2009 until August 2009.  *Id.* ¶ 26.  When Nesbitt returned to work, Venuto "began to give [her] work assignments to younger employees."  *Id.*  He also continued to yell at her and interrupt her at meetings on a weekly basis, while treating male employees more favorably.  *Id.*

On October 12, 2009, Nesbitt filed an internal complaint against Venuto, alleging hostile work environment and discrimination.  *Id.* ¶ 29.  UMMS and BWMC did not take any corrective action after investigating Nesbitt's complaint, but the president and general counsel of UMMS asked Loughlin to "use her friendship" with Nesbitt to discourage her from taking legal action or complaining to the Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶¶ 29, 34.

In the meantime, Venuto's "persistent, hostile and discriminatory conduct" continued on a weekly basis.  *Id.* ¶ 30. In January 2010, Venuto yelled at and threatened Nesbitt and

_____

[4] Neal was in his "late-20s to early-30s" and Venuto never yelled at him.   ECF No. 18 ¶ 23.

4

three other female employees "over a work-related issue." *Id.* ¶
31.  Nesbitt again began to suffer from anxiety and physical
symptoms.  *Id.* ¶ 32.  On January 22, 2010, Nesbitt complained to
UMMS's president and general counsel about Venuto's behavior.
*Id.* ¶ 33.  On January 27, 2010, Nesbitt was terminated by BWMC's
president because of her complaints about Venuto.  *Id.* ¶ 34.
This termination violated BWMC's written progressive discipline
policy because Nesbitt had not received any prior warnings or
other disciplinary steps, and was the first time in 40 years
that BWMC had not applied the policy in a case other than
egregious employee misconduct.  *Id.* ¶¶ 12, 36-37.  Nesbitt
refused a severance agreement offered in exchange for agreeing
not to sue.  *Id.* ¶ 34.  On June 2, 2010, Nesbitt filed a charge
with the EEOC against BWMC and UMMS,[5] and, on June 29, 2012,
received her right to sue letter.  *Id.* ¶¶ 7-8; *see* ECF No. 2-1.

On September 21, 2012, Nesbitt filed suit in the Circuit
Court for Anne Arundel County, Maryland alleging (1) hostile
work environment (against UMMS and BWMC) (counts one and two),
(2) disparate discipline (UMMS and BWMC) (counts three and
four), (3) retaliation (UMMS and BWMC) (counts five and six),
(4) breach of contract (BWMC) (count seven), (5) intentional

_____

[5] The defendants note that the charge of discrimination they
received had a filing date of August 25, 2010, but, for purposes
of the motion to dismiss, they presume that she filed the charge
on June 2, 2010.  ECF No. 19-1 at 12 n.4, 14 n.5.

infliction of emotional distress ("IIED") (Venuto) (count eight), (6) *respondeat superior* intentional infliction of emotional distress (UMMS and BWMC) (count nine), and (7) abusive discharge (UMMS and BWMC) (count ten).[6]  ECF Nos. 2, 18.  On January 11, 2013, the defendants removed to this Court.  ECF No. 1.

On January 18, 2013, the defendants answered Counts III and IV and moved to dismiss the remaining claims.  ECF Nos. 10, 11.  On March 7, 2013, Nesbitt moved unopposed for leave to file an amended complaint.  ECF No. 15.  On May 14, 2013, the Court granted Nesbitt leave to file an amended complaint and denied the motion to dismiss as moot.  ECF No. 16.  On May 14, 2013, Nesbitt filed an amended complaint.[7]  ECF No. 18.

On May 28, 2013, the defendants moved to dismiss counts one through four and eight through ten of the amended complaint.  ECF No. 19.  On June 14, 2013, Nesbitt opposed the motion.  ECF No. 21.  On July 1, 2013, the defendants replied.  ECF No. 22.  On August 20, 2013, Nesbitt moved unopposed for leave to file a surreply.  ECF No. 23.

---

[6] Nesbitt seeks back pay, reinstatement or front pay, compensatory, punitive, and liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.  ECF No. 18 ¶¶ 1-7.  She also demands a jury trial.  *Id.* at 23.

[7] On May 28, 2013, the defendants answered the amended complaint.  ECF No. 20.

II. Analysis

A. Legal Standard for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

7

(2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. Hostile Work Environment

Title VII prohibits an employer from discriminating against an employee because of sex. 42 U.S.C. § 2000e-2(a)(1). Under the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to . . . privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may plead a hostile work environment claim under these statutes.[8]

To state a hostile work environment claim, the plaintiff must allege facts showing that the offending conduct was: (1)

---

[8] *See, e.g., E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 174 (4th Cir. 2009); *Baqir v. Principi,* 434 F.3d 733, 746 n.14 (4th Cir. 2006) (noting that hostile work environment claims are cognizable under Title VII and assuming, without deciding, that a plaintiff aged 40 or older may bring a hostile work environment claim under the ADEA); *see also Graham v. Prince George's County,* 191 Fed. App'x. 202, 204 (4th Cir. 2006) (deciding the merits of an ADEA hostile work environment claim).

unwelcome;[9] (2) based on sex or age; (3) subjectively and objectively severe or pervasive enough to alter the plaintiff's conditions of employment and create an abusive atmosphere; and (4) imputable to the employer.[10] *See Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183-84 (4th Cir. 2001); *Baqir,* 434 F.3d at 745-46; *Alston v. N. Carolina A & T State Univ.,* 304 F. Supp. 2d 774, 779 (M.D.N.C. 2004).

### 1. Continuing Violation

The defendants contend that Nesbitt cannot base her hostile work environment claims on actions that took place more than 300 days before she filed her EEOC charge on June 2, 2010--events before August 6, 2009--because "she has not properly invoked the continuing violation doctrine." ECF No. 19-1 at 14. Nesbitt asserts that "the Amended Complaint contains sufficient factual

---

[9] An employee's complaint about the offending conduct indicates that she found it unwelcome. *See E.E.O.C. v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 314 (4th Cir. 2008). Nesbitt alleged that she made several complaints about Venuto's conduct. *See* ECF No. 18 ¶¶ 29, 33. Thus, she has sufficiently established this element. *See Sunbelt Rentals,* 521 F.3d at 314; *Smith v. First Union Nat. Bank,* 202 F.3d 234, 242 (4th Cir. 2000).

[10] A hostile work environment is imputable to the employer if supervisors knew about the offending conduct but failed to "respond with remedial action[.]" *Sunbelt Rentals,* 521 F.3d at 319. Nesbitt alleged that BWMC did not take any corrective action after they investigated her complaint against Venuto; instead, they discouraged her from further pursuing her complaint. *See* ECF No. 18 ¶¶ 29, 34. Thus, she has sufficiently established this element. *See Sunbelt Rentals,* 521 F.3d at 319.

allegations of a continuous course of harassment up to Plaintiff's termination." ECF No. 21-1 at 10.

Under the continuing violation theory, "[i]f one act in a continuous history of discriminatory conduct falls within the charge filing period, then acts that are plausibly or sufficiently related to that act, which fall outside the filing period, may be considered for purposes of liability." *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 812 (E.D. Va. 2003). The continuing violation theory applies to hostile work environment claims, which are "composed of a series of separate acts that collectively constitute one unlawful employment practice" and are timely if "an[y] act contributing to the claim occur[red] within the filing period." *Nat'l R.R. Passenger Corp. v. Morgan,* 534 U.S. 101, 117 (2002) ("It does not matter . . . that some of the component acts of the [claim] fall outside the statutory time period."). The acts that occur within the filing period need not, standing alone, constitute a violation of Title VII for the continuing violation doctrine to apply. *See Gilliam v. S. Carolina Dep't Of Juvenile Justice*, 474 F.3d 134, 141 (4th Cir. 2007).

Nesbitt alleges that, in January 2010, Venuto "yelled, berated, and threatened Plaintiff and three other female HR Recruiters over a work-related issue." ECF No. 18 ¶ 31. She also alleges that, after her return from medical leave in August

2009, Venuto reassigned Nesbitt's work to younger employees and "his hostile behavior . . . including the yelling, berating, and repeated interruptions and demeaning comments during staff meetings[] persisted on a weekly basis up to her termination." *Id.* ¶ 26. The defendants concede that events taking place after August 6, 2009 are within the charge filing period and are timely. *See* ECF No. 19-1 at 14-15. These allegations of conduct after August 6, 2009, are sufficiently related to allegations of conduct before that date, which accuse Venuto primarily of yelling at Nesbitt, interrupting her while she spoke at meetings, "demean[ing]" her with "inappropriate" and "condescending" comments, and treating male and younger employees more favorably than older women like Nesbitt. ECF No. 18 ¶¶ 16-24; *see, e.g.*, *Gilliam*, 474 F.3d at 141 (concluding that the continuing violation doctrine applied to supervisor reprimands outside the charge filing period, because plaintiff made allegations of similar reprimands occurring within the filing period). Accordingly, all of Nesbitt's allegations about Venuto's conduct may be considered in analyzing whether she has established a hostile work environment claim, because the continuing violation doctrine applies.[11]

---

[11] The defendants also fault Nesbitt for failing to include sufficient details about the incidents about which she complains--namely the dates of the incidents--citing this Court's opinion in *Cepada v. Bd. of Educ. of Baltimore Cnty.*,

11

2. Stating a Claim

a. Based on Sex and Age

The defendants assert that Nesbitt failed to establish that "the supposed unlawful conduct was based on her membership in a protected class." ECF No. 19-1 at 18. Nesbitt contends that her "allegations raise the reasonable inference that 'but for' Plaintiff's gender and age, she would not have been subjected to Defendant Venuto's conduct." ECF No. 21-1 at 14.

To establish that the conduct was based on age or sex, the plaintiff must show that "but for" her age or sex, she "would not have been the victim of the alleged discrimination." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998); *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997). Sex-based or age-based animosity can be shown by direct evidence of discrimination, or differential treatment of similarly situated

---

814 F. Supp. 2d 500, 511 (D. Md. 2011). *See* ECF No. 19-1 at 17. However, unlike the plaintiff in *Cepada*, Nesbitt has alleged details about multiple incidents involving allegedly inappropriate statements and conduct by Venuto--she described what he said and did, where he made statements and engaged in inappropriate conduct (staff meetings), and specifically identified when some of the incidents occurred. *See* ECF No. 18 ¶¶ 14, 16-18, 20-21, 31, 34. These details prevent Nesbitt's allegations from being merely "conclusory." *See Iqbal*, 556 U.S. at 678-79, 129 S. Ct. at 1949-50; *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994) (denying hostile work environment claim, because allegations were "not substantiated by accounts of specific dates, times *or* circumstances") (emphasis added).

younger or male employees. *See Gilliam*, 474 F.3d at 142; *Causey*, 162 F.3d at 801-02.

Nesbitt alleged that Venuto "yelled at[,] . . . belittle[d], undermine[d], [and] embarrass[ed] her," and other female employees, at staff meetings, but he did not treat male employees that way. ECF No. 18 ¶ 22. She alleged that she often witnessed female employees crying after being bullied by Venuto and that she had to seek professional help to deal with her anxiety and stress caused by Venuto's conduct. *Id.* ¶¶ 24-26. Although Nesbitt has not alleged any direct or indirect evidence of intentional sex discrimination, such as comments made by Venuto specifically related to her sex,[12] she has alleged that he treated similarly situated male employees more favorably than female employees by, *inter alia*, not yelling at male employees during staff meetings.[13] Similarly, Nesbitt alleged that Venuto yelled at older female employees, while treating a similarly situated younger male employee outside the protected

---

[12] *See, e.g.*, *Gilliam*, 474 F.3d at 142 (plaintiff had not offered any direct evidence of discrimination, because "she testified that [defendant] made no derogatory comments to her or others about her race").

[13] *See, e.g.*, ECF No. 18 ¶ 22 ("Defendant Venuto did not treat male employees in the same or similar manner. The male employees in the HR Division included James Uhlrich, Keith Peron, and Dan Neal. . . . Defendant Venuto never yelled at or attempted to belittle, undermine, or embarrass those male employees as he did to Plaintiff and other female employees.").

class with respect.[14]  Taken as true, these allegations raise the reasonable inference that Venuto acted out of sex-based and age-based animosity.[15]

b. Severe or Pervasive

The defendants assert that Nesbitt's allegations "do not rise to the level of an objectively hostile work environment." ECF No. 19-1 at 22.  Nesbitt contends that her allegations of Venuto's "continuous[] and persistent[] . . . severe and unwelcome conduct" directed at her and other older female employees were sufficient to state a hostile work environment claim.  *See* ECF No. 21-1 at 14.

In determining whether the offending conduct was sufficiently severe or pervasive to alter the plaintiff's employment conditions and create an abusive environment, the Court may consider "the frequency of the discriminatory conduct;

---

[14] Nesbitt alleges that Venuto never yelled at, or mistreated, HR Division employee Dan Neal, who was in his late-20s to early-30s at all times relevant to the complaint.  ECF No. 18 ¶¶ 22-23.

[15] *See Gilliam*, 474 F.3d at 142; *Causey*, 162 F.3d at 801-02; *Cepada,* 814 F. Supp. 2d at 512 ("Cepada's allegation that administrators were 'responsive' to dangerous student incidents involving his Caucasian and female colleagues raises the reasonable inference that 'but for' Cepada's race or sex, he would not have been ignored."); *Mathis v. Perry*, 996 F. Supp. 503, 523 (E.D. Va. 1997) (denying hostile work environment claim, because female plaintiff "failed to show that any similarly situated male engaged in the same behavior as did she but was not subjected to the same treatment by [the defendant supervisor]").

its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Sunbelt Rentals*, 521 F.3d at 315. The plaintiff must show more than simple teasing, offhand remarks, and isolated incidents (unless "extremely serious"). *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998).

Nesbitt has alleged that Venuto interrupted Nesbitt while she was speaking, "respond[ed] to [her] comments in a condescending manner," and yelled at her "in front of other staff members" on at least 12 separate occasions over an approximately one-year period. ECF No. 18 ¶¶ 16, 18. After she returned from a medical leave that allegedly resulted from her anxiety and stress caused by Venuto's behavior, Venuto continued "yelling, berating, and repeated[ly] interrupt[ing]" her and making "demeaning comments during staff meetings." *Id.* ¶¶ 25-26. Nesbitt alleges that the conduct occurred on "a weekly basis" during regular staff meetings and was often directed at other older female employees in addition to her. *See id.* ¶¶ 26, 31. Also, on at least two occasions, Venuto made comments to Nesbitt that a reasonable jury might objectively consider humiliating--telling her that her comments were "killing" him and accusing her of looking at his butt--especially considering that both comments were made in the presence of Nesbitt's co-

workers at staff meetings. *Id.* ¶¶ 17-18. Although each incident alleged by Nesbitt, standing alone, is likely not severe enough to establish a hostile work environment, the pervasiveness of Venuto's alleged misconduct suffices to state a hostile work environment claim.[16] *See Caldwell v. Leavitt*, 378 F. Supp. 2d 639, 661 (M.D.N.C. 2005) *aff'd in part, rev'd in part on other grounds sub nom. Caldwell v. Johnson*, 289 F. App'x 579 (4th Cir. 2008) (finding that supervisor's discriminatory conduct was "severe or pervasive," in part, because he "constantly screamed and yelled at the female scientists, berated them, and attempted to silence them at branch meetings"). The defendants' motion to dismiss Nesbitt's hostile work environment claim will be denied.

C. Disparate Discipline

Nesbitt alleges that she was discriminated against under Title VII and the ADEA, because the BWMC terminated her in response to her complaints about Venuto's conduct instead of following its written progressive discipline policy. *See* ECF No. 18 ¶¶ 59-76. She alleges that she was the first employee in 40 years, who had not engaged in egregious misconduct, that BWMC

---

[16] *Cf. Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 669 n.15 (D. Md. 2008) ("The behavior need not be *both* severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is.").

terminated without applying its progressive discipline
procedures.[17]  *Id.* ¶¶ 37, 72.

To state a claim for discriminatory disparate discipline
under Title VII or the ADEA, Plaintiff must allege: "(1) she is
a member of a protected class;[18] (2) the prohibited conduct in
which she engaged was comparable in seriousness to that of
employees outside the protected class; and (3) the disciplinary
action taken against her was more severe than the action taken
against other employees."  *Jones*, 2010 WL 3677017, at *8-*9;
*Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).
Nesbitt must show that similarly situated male and younger
employees outside the protected class "acted in substantially
the same manner, yet received a lesser degree of punishment."[19]

---

[17] The defendants contend that the standard for a disparate
treatment discriminatory discharge claim applies to Nesbitt's
disparate discipline claim.  *See* ECF No. 19-1 at 24.  However,
discriminatory discharge and disparate discipline claims are
distinct and require proof of different elements.  *See, e.g.*,
*Mahomes v. Potter*, 590 F. Supp. 2d 775, 781 (D.S.C. 2008).  A
disparate discipline claim also differs from a retaliation
claim.  *See, e.g.*, *Ingram v. Giant Food, Inc.*, 187 F. Supp. 2d
512, 514-18 (D. Md. 2002) *aff'd sub nom. Skipper v. Giant Food
Inc.*, 68 F. App'x 393 (4th Cir. 2003) (analyzing retaliation and
disparate discipline claims separately).

[18] As a female over the age of 40, *see* ECF No. 18 ¶ 9, Nesbitt
has alleged that she is a member of a protected class under
Title VII and the ADEA.  *See Jones v. Giant of Maryland, LLC*,
CIV.A.DKC 08-0304, 2010 WL 3677017, at *9 (D. Md. Sept. 17,
2010).

[19] *Jenks v. City of Greensboro*, 495 F. Supp. 2d 524, 528
(M.D.N.C. 2007) (*citing Moore v. City of Charlotte, NC*, 754 F.2d

17

If the plaintiff uses comparators "from the same protected class, then any discrepancy in discipline is not attributable to plaintiff's membership in that class." *Allen v. Dorchester Cnty., Md.*, CIV.A. ELH-11-01936, 2013 WL 5442415, at *15 (D. Md. Sept. 30, 2013) (*citing Booth v. Maryland,* 327 F.3d 377, 383 (4th Cir. 2003)).

Nesbitt alleges that she was terminated because she made several complaints about Venuto's conduct,[20] and that the defendants terminated no other employee without using progressive disciplinary measures, except in egregious cases.

---

1100, 1106 (4th Cir. 1985)); *Disher v. Weaver*, 308 F. Supp. 2d 614, 620 (M.D.N.C. 2004); *see also Jenkins v. Baltimore City Fire Dep't*, 862 F. Supp. 2d 427, 452 (D. Md. 2012) *aff'd,* 519 F. App'x 192 (4th Cir. 2013) ("The law recognizes 'an understanding both of the need to compare only discipline imposed for like offenses in sorting out claims of disparate discipline under Title VII and of the reality that the comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances.'").

[20] It is unlikely that Nesbitt can show that her complaints to supervisors about Venuto's conduct qualified as "prohibited conduct" for purposes of a disparate discipline claim. Such claims "generally appl[y] to situations in which employees have faced discipline after engaging in workplace misconduct, such as violations of policies and rules, or criminal activity." *Alexander v. U.S. Dep't of Veterans Affairs*, CIV.A. DKC 10-3168, 2012 WL 78874, at *7 (D. Md. Jan. 10, 2012) (denying disparate discipline claim when plaintiff was disciplined for underperformance, not misconduct). Nesbitt has only alleged that her complaints were "equated" with "misconduct," presumably because they led to her termination, ECF No. 18 ¶ 61, and she has not alleged that her complaints violated her employer's policies or rules.

ECF No. 18 ¶¶ 34, 37. However, Nesbitt does not allege that any other similarly situated employee outside her protected class engaged in comparable conduct--i.e., repeatedly complaining about a supervisor. *See, e.g., id.* ¶ 37; *Jenks*, 495 F. Supp. 2d at 528. Further, Nesbitt alleges that no other employee was disciplined like her--her comparators thus include older and younger employees and male and female employees. *See* ECF 18 ¶ 37. Accordingly, her allegations do not create an inference that the disparate discipline she received resulted from discrimination. *Allen*, 2013 WL 5442415, at *15. Nesbitt's disparate discipline claims will be dismissed.[21]

    D. Retaliation

        1. Motion for Leave to File a Surreply

In their reply brief, the defendants, for the first time, argue that Nesbitt's retaliation claims "should be dismissed," because she alleged that her complaints about Venuto were a "motivating factor" in her termination. ECF No. 22 at 15-16. They assert that the recent Supreme Court decision, *University of Texas Southwest Medical Center v. Nassar*, 133 S. Ct. 2517,

---

[21] Nesbitt requests the opportunity to engage in discovery to remedy any deficiencies in her pleadings. *See* ECF No. 21-1 at 16. However, Nesbitt must state a plausible claim for relief before she is entitled to discovery. *See Iqbal*, 556 U.S. at 678-79, 129 S. Ct. at 1949-50. Nesbitt's allegations of disparate discipline raise no more than the "mere possibility of misconduct," which is insufficient to survive a motion to dismiss. *See id.* at 679, 1950.

2522, 186 L. Ed. 2d 503 (2013), requires a Title VII plaintiff to prove that her protected activity was the "but for" cause of her termination, not just a motivating factor.[22] *See id.*

Nesbitt has moved for leave to file a surreply to respond to the defendants' arguments about her retaliation claims. ECF No. 23. Unless otherwise ordered by the Court, a party may not file a surreply. Local Rule 105.2(a) (D. Md. 2012). "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve,* 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd,* 85 Fed. App'x 960 (4th Cir. 2004). Because Nesbitt seeks to oppose arguments that the defendants raised for the first time in their reply brief, her motion for leave to file a surreply will be granted.

### 2. Retaliation Claim

To state a *prima facie* retaliation claim under Title VII or the ADEA, the plaintiff must show: (1) protected activity;[23] (2)

---

[22] Although ordinarily, federal courts will not consider an argument raised for the first time in a reply brief, "the power to decline consideration of such arguments is discretionary." *Clawson v. FedEx Ground Package Sys., Inc.,* 451 F. Supp. 2d 731, 734 (D. Md. 2006). Because the defendants' argument rests on a Supreme Court opinion released after they filed the motion to dismiss, and Nesbitt has filed a surreply, the Court will consider the argument. *See id.* (considering argument raised in a reply brief, because opposing party filed a surreply and it was the party's first real opportunity to brief the new issue).

"materially" adverse employment action;[24] and (3) a causal
connection between the protected activity and materially adverse
action. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53,
68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); *Bryant v. Aiken
Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 543 (4th Cir. 2003);
*Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 684 (4th
Cir. 2009). A "materially" adverse action is one that "well
might have dissuaded a reasonable worker from making or
supporting a charge of discrimination." *Burlington,* 548 U.S. at
68, 126 S. Ct. 2405; *see also Harman v. Unisys Corp.,* 356 Fed.
Appx. 638, 641 (4th Cir. 2009). If the employer takes the
action "shortly after" learning about the protected activity,
courts may infer a causal connection between the two. *Price v.
Thompson,* 380 F.3d 209, 213 (4th Cir. 2004).

   *Nassar* holds that a plaintiff "must establish that his or
her protected activity was a but-for cause of the alleged
adverse action by the employer," not just a "motivating factor"

---

[23] Nesbitt has sufficiently alleged that she engaged in protected
activity under Title VII and the ADEA, because she "opposed an
unlawful employment practice which [she] reasonably believed had
occurred or was occurring" by complaining about Venuto's
allegedly discriminatory conduct. *See* ECF No. 18 ¶¶ 77-80, 86-
89; *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003) (Title
VII); *Johnson*, 309 F. App'x at 685 (4th Cir. 2009) (ADEA).

[24] Termination of employment is a materially adverse employment
action. *See, e.g., Gibson v. Marjack Co., Inc.*, 718 F. Supp. 2d
649, 655 (D. Md. 2010). Thus, Nesbitt has alleged this element.
*See* ECF No. 18 ¶¶ 81, 90.

to establish the causation element of a retaliation claim. *See*
133 S. Ct. at 2533-34. Nesbitt repeatedly alleges that her
protected activity was a "motivating factor" in her discharge
but does not allege that, but-for her complaints, she would not
have been discharged. *See, e.g.*, ECF No. 18 ¶ 91. She requests
leave to amend the complaint to remedy this deficiency, *see* ECF
No. 23-1 at 3, and the defendants do not oppose this request.

Federal Rule of Civil Procedure 15(a)(2) instructs that
leave to amend should be freely given when justice requires.
Leave should be denied only when amendment would prejudice the
opposing party, amount to futility, or reward the movant's bad
faith. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527
F.3d 377, 390 (4th Cir. 2008). Nesbitt does not seek leave to
amend in bad faith--she seeks it in response to the defendants'
late-raised argument opposing her retaliation claim--and the
amendment is not obviously futile or prejudicial to the
defendants. Thus, the defendants' request to dismiss Nesbitt's
retaliation claims is moot,[25] because Nesbitt will be granted
leave to amend counts five and six of her complaint.

---

[25] The defendants did not move to dismiss Nesbitt's retaliation
claims. *See, e.g.*, ECF No. 22 at 16. The Court may not order
dismissal of these claims except upon motion. Fed. R. Civ. P.
7(b)(1).

E. State Law Claims[26]

1. Intentional Infliction of Emotional Distress

Nesbitt brings two claims of IIED under Maryland common law. ECF No. 18 at 18-20. Nesbitt alleges that "as a result of [Venuto's] persistent, intentional and reckless conduct," she "suffered severe emotional distress." *Id.* ¶ 102. She also alleges that "Venuto's conduct was committed within the scope of his employment with" UMMS and BWMC and with their authorization. *Id.* ¶¶ 111-12. The defendants contend that Nesbitt's allegations of Venuto's conduct, taken as true, do not rise to the level of extreme and outrageous conduct required to state an IIED claim. *See* ECF No. 19-1 at 30-31.

To state a claim for IIED, the complaint must show that the defendant intentionally or recklessly engaged in conduct that was extreme and outrageous, and the wrongful conduct caused the plaintiff severe emotional distress. *Batson v. Shiflett,* 325

---

[26] Maryland applies the rule of *lex loci delicti* to determine the law to apply in tort cases, such as IIED and abusive discharge. *See, e.g., Philip Morris Inc. v. Angeletti*, 358 Md. 689, 750, 752 A.2d 200, 233 n.28 (2000); *see also Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 608, 561 A.2d 179, 181 (1989) (noting that abusive discharge is a tort claim). Under that rule, the court applies the law of the state "where the injury—the last event required to constitute the tort-occurred." *Lab. Corp. of America v. Hood,* 395 Md. 608, 615, 911 A.2d 841, 845 (2006). All the events at issue in this suit allegedly took place at Nesbitt's place of work, which is located in Maryland. *See, e.g.,* ECF No. 18 ¶¶ 3, 14. Accordingly, Maryland law governs Nesbitt's state law claims.

Md. 684, 733, 602 A.2d 1191, 1216 (1992). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 734, 1216.[27] Each element "must be satisfied completely before a cause of action will lie." *Hamilton v. Ford Motor Credit Co.,* 66 Md. App. 46, 502 A.2d 1057, 1063 (Md.Ct.Spec.App. 1986). "IIED claims are rarely viable in a case brought under Maryland law," *Takacs v. Fiore,* 473 F. Supp. 2d 647, 652 (D. Md. 2007) (internal quotation marks omitted), especially in workplace harassment cases, *see Arbabi v. Fred Meyers, Inc.,* 205 F. Supp. 2d 462, 466 (D. Md. 2002).

Nesbitt alleges that Venuto yelled at her, ignored her, belittled her, and accused her of looking at his butt. *See, e.g.,* ECF No. 18 ¶¶ 15, 18-19. Although these actions allegedly caused Nesbitt distress, and created a disagreeable work environment, they do not come close to establishing the

---

[27] For example, a doctor knowingly exposed a nurse to an incurable sexually transmitted disease without warning her, a psychologist treating a patient for marital problems had sex with the client's wife, and an insurer forced a claimant to undergo a psychiatric examination for the sole purpose of harassing her and forcing her to abandon her claim or commit suicide. *Batson*, 325 Md. at 734, 602 A.2d at 1216 (*citing Figueiredo-Torres v. Nickel,* 321 Md. 642, 584 A.2d 69 (1991); *B.N. v. K.K.,* 312 Md. 135, 538 A.2d 1175 (1988); *Young v. Hartford Accident & Indemnity*, 303 Md. 182, 492 A.2d 1270 (1985)).

24

requisite extreme and outrageous conduct required to state an
IIED claim.[28]

Because Nesbitt did not state an IIED claim against Venuto,
Nesbitt cannot state a claim that UMMS and BWMC are vicariously
liable for Venuto's conduct under the doctrine of *respondeat
superior*. *Cf. S. Mgmt. Corp. v. Taha*, 378 Md. 461, 481, 836
A.2d 627, 638 (2003) ("[Employer] cannot be held liable for the
tort of malicious prosecution under the doctrine of respondeat
superior without evidentiary proof that one of its employees,
acting within the scope of that person's employment duties,
engaged in conduct sufficient to form a prima facie case of
malicious prosecution."). Nesbitt's IIED claims will be
dismissed.[29]

_____

[28] *See, e.g.*, *Byington v. NBRS Fin. Bank,* 903 F. Supp. 2d 342,
352 (D. Md. 2012) (allegations that plaintiff was harassed and
intimidated, accused of a crime, subjected to harsh evaluation
standards, and denied a promotion at work were insufficient to
state an IIED claim); *Waldrop v. Sci. Applications Int'l Corp.*,
CIV.A. AW 10-CV-0328, 2010 WL 2773571, at *4 (D. Md. July 13,
2010) (denying IIED claim, because making inappropriate comments
about plaintiff's national origin, refusing to speak to
plaintiff during staff meetings, and requiring plaintiff to
complete English language training were "'mere insults and
injuries'" insufficient to establish extreme and outrageous
conduct) (*quoting Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551,
560 (D. Md. 2005)).

[29] Nesbitt again seeks discovery to remedy any deficiencies in
her pleadings. ECF No. 21-1 at 17. However, Nesbitt is not
entitled to discovery unless she states a plausible claim for
relief. *See supra* note 21.

2. Abusive Discharge

In Maryland, an at-will employee can raise a wrongful discharge claim only if his termination violated a "clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.3d 464, 473 (Md. 1981). To state a claim for wrongful discharge, a plaintiff must show: "(1) that [s]he was discharged; (2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and the decision to fire [her]." *Shapiro v. Massengill*, 105 Md. App. 743, 661 A.2d 202, 213 (Md.Ct.Spec.App. 1995). The plaintiff must demonstrate the public policy with "clarity, specificity, and authority." *Id.* Ordinarily the plaintiff must show the employer "violated the legal rule at issue[,] punished the employee for exercising some legal right[,]" or discharged the employee for "refusing to violate the law, or . . . the legal rights of some third party." *McIntyre v. Guild, Inc.*, 105 Md. App. 332, 344, 659 A.2d 398, 404 (1995).

Nesbitt alleges that Venuto's "abusive, bullying conduct" violated three "clear mandate[s] of public policy" as expressed in an unenacted Maryland State Senate bill,[30] a judicial

---

[30] *See* S.B. 999, 2012 Gen. Assemb., 430th Sess. (Md. 2012).

decision,[31] and a provision of the Maryland criminal code prohibiting harassment in public places.[32]   *See* ECF No. 18 ¶ 123. However, Nesbitt's *dismissal* must violate public policy--she alleges that she was dismissed because she complained about Venuto's allegedly discriminatory conduct, which is protected activity under Title VII[33] and Maryland statutory law.[34]   *See Chappell v. S. Maryland Hosp., Inc.,* 320 Md. 483, 496, 578 A.2d 766, 773 (1990) ("[It] is clear that [plaintiff] can pursue a remedy under both the state and federal anti-discrimination

---

[31] *See Watson v. Peoples Sec. Life Ins. Co.,* 322 Md. 467, 468, 588 A.2d 760, 761 (1991).

[32] Section 3-803 of the Maryland Criminal Code provides:

(a) A person may not follow another in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys the other:
(1) with the intent to harass, alarm, or annoy the other;
(2) after receiving a reasonable warning or request to stop by or on behalf of the other; and
(3) without a legal purpose.

Md. Code Ann., Crim. Law § 3-803 (West 2011)

[33] Nesbitt's complaints about Venuto's allegedly discriminatory conduct are protected by Title VII if either Venuto actually violated Title VII or Nesbitt reasonably believed his actions were unlawful. *See E.E.O.C. v. Navy Fed. Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005).

[34] Section 20-606 of the Maryland Code provides: "An employer may not discriminate or retaliate against any of its employees or applicants for employment . . . because the individual has . . . opposed any practice prohibited by this subtitle [including sex and age discrimination]." Md. Code Ann., State Gov't § 20-606(f) (1) (West 2009).

27

statutes for his discharge from employment for apprising his employer of allegedly discriminatory employment practices."). A cause of action for abusive discharge does not lie when the discharge was "motivated by employment discrimination prohibited by Title VII and [Maryland statutory law]."[35] *Makovi*, 316 Md. at 626, 561 A.2d at 189 (denying relief to plaintiff alleging that her discharge was motivated by sex discrimination, because "the generally accepted reason for recognizing the tort [of abusive discharge], that of vindicating an otherwise civilly unremedied public policy violation, does not apply"); *Chappell*, 320 Md. at 496, 578 A.2d at 773.

Nesbitt also alleges that the defendants terminated her "in part, to cover up the nature and degree of [Venuto's] intimidating and bullying conduct." *See* ECF No. 18 ¶ 224. Although Nesbitt identifies Senate Bill 999 as creating a clear

---

[35] Nesbitt asserts that *Watson*, 322 Md. at 468, 588 A.2d at 761, "has recognized a clear mandate of public policy in an 'individual's interest in preserving bodily integrity and personality.'" ECF No. 21-1 at 18. However, the *Watson* Court reiterated that conduct giving rise to a hostile work environment discrimination claim generally does not support an abusive discharge claim. 322 Md. at 479-80, 588 A.2d at 766. *Watson* was distinguished, because the jury could conclude that the plaintiff was discharged for suing a co-worker for sexual harassment assault and battery. *See id.* at 480-81, 766. Nesbitt has not alleged that she sought external legal redress against Venuto or that Venuto physically harassed her, allegations which might bring her claims within the scope of *Watson*.

mandate of public policy against workplace bullying,[36] the Bill
has not been enacted.  Maryland law ordinarily confines "the
scope of such mandates in the wrongful discharge context to
'clear and articulable principles of law,'" which are generally
derived only from "prescribed constitutional or statutory
mandates" and occasionally judicial decisions.[37]  *See Newell v.
Runnels*, 407 Md. 578, 646, 967 A.2d 729, 769 (2009); *e.g.*,
*Wholey v. Sears Roebuck*, 370 Md. 38, 71, 803 A.2d 482, 501
(2002) (noting that judicial declarations of public policy are
done "cautiously" and should be "carefully tethered to
fundamental policies that are delineated in constitutional or
statutory provisions").  Because this Senate Bill declares
policy that has not been enacted by the Maryland legislature

---

[36] For example, in its preamble, Senate Bill 999 states:

> Workplace bullying, abuse, and harassment can inflict
> serious harm on targeted employees, including feelings
> of shame and humiliation, severe anxiety, depression,
> suicidal tendencies, impaired immune systems,
> hypertension, increased risk of cardiovascular
> disease, and symptoms consistent with posttraumatic
> stress disorder . . . Existing workers' compensation
> plans and common-law tort actions are inadequate to
> discourage workplace abuse or to provide adequate
> relief to employees who have been harmed by abusive
> work environments[.]

S.B. 999, 2012 Gen. Assemb., 430th Sess. (Md. 2012).

[37] Although *Watson* represents an exception to this general
principle, Nesbitt's claims are not within its scope.  *See supra*
35.

into law, standing alone it cannot support an abusive discharge claim. *See Porterfield v. Mascari II, Inc.*, 374 Md. 402, 418, 823 A.2d 590, 599 (2003) ("[T]he establishment of an otherwise undeclared public policy as a basis for a judicial decision involves the application of a very nebulous concept to the facts of a given case, and that declaration of public policy is normally the function of the legislative branch.") (*quoting Wholey*, 370 Md. at 54, 803 A.2d at 491 (internal quotations omitted)).[38]

Finally, Nesbitt alleges that her termination violated the clear policy mandate expressed in Maryland criminal harassment law. *See* ECF No. 18 ¶ 123. However, even if Nesbitt could establish that Venuto's conduct was criminal harassment, §3-803 does not express a public policy mandate against "covering up" harassment, nor does it provide protection for employees who report criminal harassment to their employers. *See, e.g., Wholey*, 139 Md. App. at 658, 779 A.2d at 417 (denying claim when

---

[38] *See also Sears, Roebuck & Co. v. Wholey*, 139 Md. App. 642, 660-61, 779 A.2d 408, 419 (2001) *aff'd sub nom. Wholey*, 370 Md., 803 A.2d ("In those Maryland cases recognizing a mandate of public policy well-established enough to form the predicate for an action for wrongful discharge, there was a preexisting, unambiguous, and particularized pronouncement, by constitution, *enactment*, or prior judicial decision, directing, prohibiting, or protecting the conduct (or contemplated conduct) in question, so as to make the Maryland public policy on the topic not a matter of judicial conjecture or even interpretation.") (emphasis added).

plaintiff was terminated for reporting another employee's theft, because the Maryland theft statute "does not impose on citizens a duty to investigate or report theft"); *Wholey*, 370 Md. at 62, 803 A.2d at 496 ("To qualify for the public policy exception to at-will employment, the employee must report the suspected criminal activity to the appropriate law enforcement or judicial official, not merely investigate suspected wrong-doing and discuss that investigation with co-employees or supervisors."). Accordingly, Nesbitt's abusive discharge claim will be dismissed.

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss will be granted in part, and denied in part, and the plaintiff's motion for leave to file a surreply will be granted.

$\underline{\quad 12/6/13 \quad}$
Date

William D. Quarles, Jr.
United States District Judge

31